MARY DENGLER v. SPECIAL ATTENTION HEALTH SERVICES, INC., ET AL.
(AC 19777)

Foti, Schaller and O'Connell, Js.

---

Argued October 24, 2000—officially released March 27, 2001

*Ivan M. Katz*, for the appellant-cross appellee (plaintiff).

*Kristen Sotnik Falls*, with whom, on the brief, was *John M. Letizia*, for the appellee-cross appellant (defendant Connecticut Hospital Association Workers' Compensation Trust).

*Opinion*

FOTI, J. The plaintiff, Mary Dengler, appeals from the decision of the workers' compensation review board (board) affirming in part and reversing in part the decision by the workers' compensation commissioner (commissioner) dated February 18, 1998. The defendant Connecticut Hospital Association Workers' Compensation Trust (trust) cross appeals from the same decision.[1] The plaintiff claims that the board improperly (1) required her to prove through expert medical evidence that a leg injury she suffered in 1997 was causally related to a back injury she suffered in 1996, and retried the facts and substituted its own inferences from them in place of those drawn by the commissioner, (2) reversed the commissioner's finding that she was disabled through the date of the commissioner's finding and award, and (3) failed to remand the matter to the commissioner for further proceedings rather than reversing his decision. On cross appeal, the trust claims that the board improperly declined to find that the trust had canceled its insurance policy with the plaintiff's employer, the defendant Special Attention Health Services, Inc. (Special Attention), and concluded that the trust had provided workers' compensation insurance to Special Attention on August 19, 1996, the date when

[1] The Second Injury and Compensation Assurance Fund also is a named defendant in this appeal. After concluding that the issues on appeal did not concern the fund, it declined to take an active role in this appeal and cross appeal. The named defendant, Special Attention Health Services, Inc., is not a party to the appeal or to the cross appeal filed by the trust.

the plaintiff injured her back. We affirm the decision of the board.

The following facts and procedural history are necessary for our resolution of this appeal and cross appeal. The commissioner found that on August 19, 1996, Special Attention employed the plaintiff as a certified nurse's assistant. While performing work-related duties at a patient's home, the plaintiff injured her lumbar spine. Special Attention directed the plaintiff to seek treatment from authorized medical providers. The plaintiff, after receiving treatment from several physicians and obtaining physical therapy, was diagnosed with degenerative disc disease, a lumbar strain and spondylosis. The commissioner found that the plaintiff suffered from a work-related total disability from August 19, 1996, through February 16, 1997.

On February 16, 1997, almost six months after her back injury, the plaintiff "experienced some instability in her lumbar spine, which caused her to drop to her knees in her kitchen." The commissioner also found that on the same day, the instability in her lumbar spine caused her to fall while descending a stairway at her home. As a result of that fall, the plaintiff sustained a fractured tibia and fibula in her right leg. The commissioner found that "[t]he instability the [plaintiff] experienced on February 16, 1997, was causally related to the back injury she sustained on August 19, 1996." The commissioner found that the plaintiff had suffered a total disability from August 19, 1996, to February 18, 1998, the date he issued his finding and award. The commissioner found, as well, that the trust had provided workers' compensation insurance to Special Attention on August 19, 1996. Finding that the plaintiff's claimed injuries were causally related to the injury she suffered on August 19, 1996, and the trust was responsible for any benefits owed to the plaintiff as a result of the August 19, 1996 injury, the commissioner ordered the

trust to pay temporary total disability benefits and all medical bills from authorized medical providers accrued from August 19, 1996, until the date of his finding and award.

The trust timely filed a motion to correct the commissioner's finding and award. The trust proposed, inter alia, that the commissioner's finding should reflect the fact that the plaintiff injured her leg while running down stairs at her home in response to a dogfight in her backyard. The trust also wanted the commissioner's finding to include the fact that hospital treatment notes indicated that the plaintiff was chasing dogs in her backyard when she fell into a hole and injured her leg. The trust requested that the commissioner delete his finding that the plaintiff's August 19, 1996 injury caused the February 16, 1997 injury. Finally, the trust requested that the commissioner add a finding that the trust legally canceled Special Attention's compensation insurance policy and that he dismiss the claim. The commissioner denied the trust's motion to correct, and the trust appealed to the board.

The board determined that Special Attention's policy with the trust remained in effect on August 16, 1996, the date that the trust advised Special Attention in writing that the policy would be canceled because of nonpayment of premiums. The board also concluded that the commissioner improperly found that the plaintiff's back injury caused her leg injury. The board reasoned that the commissioner could not find a causal relationship between those events based solely on the statements of the plaintiff and an eyewitness, and that given the absence of medical evidence in the record as to causal relationship, the plaintiff had failed to prove that her leg injury was attributable to her back injury. The board, therefore, reversed the commissioner's findings that the plaintiff's back injury caused her leg injury, and that she had suffered a total disability through

the date of the commissioner's finding and award. The plaintiff then appealed and the trust cross appealed to this court. Additional facts will be set forth as they become relevant in the context of the claims before us.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the review board nor this court has the power to retry facts. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board." (Citations omitted; internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 57 Conn. App. 406, 411, 750 A.2d 1098 (2000).

## I

The plaintiff's first claim is that the board improperly reversed the commissioner's decision that her August 19, 1996 work-related back injury caused her leg injury. We will discuss the plaintiff's arguments on that claim separately. Essentially, the plaintiff claims that the board improperly required her to prove through expert medical evidence that her leg injuries were causally connected to her back injury. The plaintiff also claims that the board improperly retried the facts of the case and substituted its inferences from them for those drawn by the commissioner. We disagree with both claims.

## A

The commissioner found that the plaintiff's August 19, 1996 work-related injury caused her leg injury. The plaintiff testified that earlier on the date of her leg

injury, February 16, 1997, she felt instability in her lumbar spine that caused her to drop to her knees in her kitchen. She also testified that as she was going down stairs later that day, that same feeling of instability in her lumbar spine caused her to collapse and consequently fracture her tibia and fibula. Thomas Iaquessa, the plaintiff's brother and the sole witness to her fall, testified on her behalf and corroborated her version of how she injured her leg. The plaintiff received treatment from several authorized medical providers following the August 19, 1996 work-related accident. Many, if not all, of the plaintiff's medical reports were in evidence. The commissioner found a causal relation between her previous back injury and her leg injury, and found that she had been totally disabled since August 19, 1996.

The trust argued to the commissioner, and later to the board, that the plaintiff had failed to prove a causal relationship between the back injury and the leg injury. The trust argued that no medical evidence established the necessary causal link between those events, that a note in a medical record indicated that the plaintiff had fallen in a hole while chasing dogs in her backyard, and that her actions in that regard constituted an "independent, intervening and superseding legal cause of the [leg] injury."

The board observed that the commissioner's finding related to the cause of her leg injury rested solely on the statements of the plaintiff and her brother. The board also noted an absence of expert medical evidence on the issue of causal connection, and found that the commissioner's findings concerning that issue "fail[ed] to surmount the level of speculation and surmise." The board ruled that "[t]he testimony of two lay witnesses as to the circumstances of this injury, without any medical evidence to underpin the claim, is inadequate to establish that the injury was caused by the [plaintiff's] back condition." Accordingly, the board reversed the com-

missioner's decision insofar as it found that the leg injury was attributable to the back injury and that the plaintiff was totally disabled through the date of the commissioner's finding and award.

The standard of review to be used by the board when reviewing a commissioner's findings is set forth in Regulations of Connecticut State Agencies § 31-301-8.[2] That section directs the board not to retry the case before it, but to determine whether evidence supports the commissioner's finding. "Whether an injury arose out of and in the course of employment is a question of fact to be determined by the commissioner." *Pereira* v. *State*, 228 Conn. 535, 544, 637 A.2d 392 (1994). "It is well settled in workers' compensation cases that the injured employee bears the burden of proof, not only with respect to whether an injury was causally connected to the workplace, but that such proof must be established by *competent evidence*." (Emphasis added.) *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 282, 714 A.2d 60 (1998).

In several decisions, our Supreme Court has discussed the need for expert medical evidence to establish the cause of injuries in workers' compensation cases. In one decision, the court held that expert medical evidence was not necessary to demonstrate a reasonably probable connection between the plaintiff's work and the injury he claimed to have sustained. *Garo-*

[2] Section 31-301-8 of the Regulations of Connecticut State Agencies provides: "Ordinarily, appeals are heard by the compensation review division upon the certified copy of the record filed by the commissioner. In such cases the division will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusion reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the corrections of the finding of the commissioner is analogous to, and its method of correcting the finding similar to the power and method of the Supreme Court in correcting the findings of the trial court."

*fola* v. *Yale & Towne Mfg. Co.*, 131 Conn. 572, 41 A.2d 451 (1945). The injured plaintiff in *Garofola* claimed to have suffered a low back sprain while performing his duties as a molder at his workplace. Id., 573. Our Supreme Court found that expert evidence to establish causation for the plaintiff's injuries was unnecessary given the facts in that dispute. Id., 574. The court reasoned that "[i]n the case before us, the commissioner could have concluded that it was much more likely that the sprain occurred from the work in which the plaintiff was engaged, arising, as it did, during performance of the work, than that it occurred from some unknown cause." Id.

Our Supreme Court revisited the issue of determining when expert evidence is necessary to establish causation in workers' compensation cases in *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 291 A.2d 743 (1972). The plaintiff in *Murchison* claimed that she developed numbness in her leg while at work because her employer changed the method by which she performed her duties as a machine operator. Id., 149–50. The plaintiff did not offer expert testimony in support of her contention that the new method caused her injuries. Instead, the plaintiff testified about her injuries, how she believed they were caused and demonstrated for the commissioner the posture from which she performed her work-related duties. Id., 152. Although the commissioner in that case fully credited the plaintiff's testimony concerning the cause of her injuries, on appeal the Supreme Court concluded that the plaintiff's testimony was incompetent to sustain her burden of proof as to causation. Id.

The court in *Murchison* reasoned that "[i]n the absence of direct medical testimony, the commissioner resorted to speculation and surmise in concluding that the plaintiff's injury arose out of and in the course of her employment. The [trial court which reversed the

commissioner's award] correctly applied the law by finding that medical testimony was necessary to show a causal connection between her employment and injury." Id. The court distinguished the case before it from *Garofola* v. *Yale & Towne Mfg. Co.*, supra, 131 Conn. 572, noting that the commissioner did not require expert evidence in *Garofola* because in that case the plaintiff's injury was more likely caused by his work rather than by some unknown cause. *Murchison* v. *Skinner Precision Industries, Inc.*, supra, 162 Conn. 149. The *Murchison* court noted further that when "it is difficult to ascertain whether or not the [injury] arose out of the employment, it is necessary to rely on expert medical opinion." (Internal quotation marks omitted.) Id., 152.

Where an issue of causation for injuries in a workers' compensation case cannot be answered as a "matter of common knowledge"; *Garofola* v. *Yale & Towne Mfg. Co.*, supra, 131 Conn. 574; expert testimony on the issue is necessary. In the present case, the plaintiff's leg injury occurred outside of the workplace and several months after she ceased working. The relationship between the plaintiff's work-related back injury and the "instability in her lumbar spine" that she alleges to have experienced and which she claims caused her subsequent fall and leg injury, is not a matter within the common knowledge of the commissioner, the board or this court. Such a theory of cause and effect is not so "in accord with ordinary human experience"; id.; that it obviates the need for expert medical evidence. Given the complex medical issue before him, the commissioner was not at liberty to reason that the plaintiff's leg injury resulted from her back injury simply because it occurred after her back injury. We find the present case to be analogous to *Murchison* v. *Skinner Precision Industries, Inc.*, supra, 162 Conn. 142, and conclude that the board correctly applied the law by requiring

that the plaintiff prove causation with expert medical evidence.

B

Our discussion in part I A relates to the plaintiff's next claim that the board improperly substituted its own inferences for those drawn by the commissioner when it reversed his finding that the plaintiff's back injury and alleged resulting lumbar instability caused her leg injury on February 16, 1997. The board noted that the commissioner's decision "was based solely on the statements of the [plaintiff] and an eyewitness," and that "the most specific reference to the cause of the [plaintiff's] injury, based on the history she provided at the time of her hospitalization, states that she 'was chasing dogs outside in the yard when she fell into a hole, [caught] her [right] foot and twisted her [right] leg.' " The board went on to conclude that the testimony of two lay witnesses, without expert medical evidence, did not establish adequately causation for the plaintiff's injury.

As a preliminary matter, we note that the plaintiff attempts to characterize the board's decision in this regard as resting on a new and separate finding of fact. In her principal brief, the plaintiff argues that the board "improperly retried the facts and improperly relied on the absence of medical records or expert medical testimony to relate the plaintiff's back condition (resulting from the admittedly compensable injury) to the incident that occurred on February 16, 1997, when she broke her leg. This was error." Although it is clear from our earlier discussion that the board is prohibited from retrying the case or substituting its inferences for those drawn by the commissioner, the board certainly was free to examine the record to determine whether competent evidence supported the commissioner's findings, inferences drawn from such findings and conclusions.

"The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) *Hebert* v. *RWA, Inc.*, 48 Conn. App. 449, 453, 709 A.2d 1149, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998). Inferences may only be drawn from competent evidence. "Competent evidence" does not mean any evidence at all. It means evidence on which the trier properly can rely and from which it may draw reasonable inferences.

As we explained in part I A, the board properly concluded that the plaintiff could not prove causation for her leg injuries in the absence of expert medical evidence. The commissioner clearly found the plaintiff and her witness to be credible. The board did not disbelieve the plaintiff and her witness with respect to the matters on which they were competent to testify in favor of a different account of what occurred on February 16, 1997. The law clearly prohibits the board from doing so. The board noted that the only mention of causation in the medical records and reports consisted of a note in a hospital record stating that the plaintiff had tripped in a hole in her backyard. The board did not retry the facts or draw different inferences from the competent evidence before the commissioner. It referenced the hospital note not to credit it, but to show that it contained the only discussion of causation in the medical records.

When the board reviews a commissioner's determination of causation, it may not substitute its own findings for those of the commissioner. *O'Reilly* v. *General Dynamics Corp.*, 52 Conn. App. 813, 819, 728 A.2d 527 (1999). A commissioner's conclusion regarding causation is conclusive, provided it is supported by competent evidence and is otherwise consistent with the law. *Funaioli* v. *New London*, 61 Conn. App. 131, 136, 763

A.2d 22 (2000). Here, the board did not substitute its own findings; instead it concluded that in the absence of competent evidence on the issue of causation, the commissioner's decision could not stand.

The plaintiff cites *Keenan* v. *Union Camp Corp.*, supra, 49 Conn. App. 280, for the proposition that the board could not base its decision on a different weighing of the evidence than that of the commissioner. *Keenan* is distinguishable from the present case. The plaintiff in *Keenan* claimed that injuries he sustained when he fell down a flight of stairs resulted from an earlier compensable back injury he sustained during the course of his employment. Id., 284. The board reversed the commissioner's decision to award the plaintiff benefits for those injuries. Id., 282. The board reasoned that because the commissioner failed to cite any expert medical evidence concerning causation in her findings, she was barred from relying on such evidence in reaching her award. Id., 284.

In *Keenan*, we reversed the decision of the board and upheld the commissioner's award, reasoning that nothing required the commissioner to "patently state *every* piece of credible evidence or testimony that contributed to the rendering of her decision." (Emphasis in original.) Id., 285. We upheld the award because the "commissioner had before her various medical reports and opinions, medical records and testimony from which she could properly determine whether [the plaintiff's] fall . . . was causally related to his prior, compensable . . . injury." Id., 285–86. In contrast, the plaintiff in the present case failed to submit any such necessary expert medical evidence to the commissioner.

## II

The plaintiff next claims that the board improperly reversed the commissioner's finding that she was disa-

bled from August 19, 1996 (the date of her back injury) through February 18, 1998 (the date of the commissioner's finding and award). We disagree.

The following additional facts are necessary to our resolution of the plaintiff's claim. The parties do not dispute the compensability of the plaintiff's August 19, 1996 back injury. The plaintiff's treating physician diagnosed her as having sustained a work-related injury. Following that injury, the plaintiff received treatment from several physicians. The commissioner found that the plaintiff's August 19, 1996 back injury was work-related and compensable. The board did not disturb that finding.

When it reversed the commissioner's finding that the plaintiff had suffered from a total disability through the date of the commissioner's finding and award, February 18, 1998, the board noted that "[t]here is no medical evidence to support a finding that the [plaintiff's] back condition played any part in her disability after February 16, 1997, the date she broke her leg." The plaintiff argues that this is another example of the board substituting its judgment for that of the commissioner. The plaintiff submits that her employer bore the burden of proving any change in her medical condition warranting a change in her benefit status.

Our review of the record reveals that as of February 16, 1997, the plaintiff had not been released to return to work. The plaintiff did not, however, produce expert medical evidence that she suffered from a total disability and would never be able to return to work following her back injury. In her principal brief, she points to several excerpts from her medical records in which her symptoms following the back injury are recorded. She also notes that Gary Bloomgarden, one of the physicians who treated her injuries, stated, in reference to her back injury, that "[h]er long-term prospects for returning to

work are close to nil, and I feel that this is a work-related injury . . . ." As with our earlier discussion in part I, we look to whether competent medical evidence supports the commissioner's finding and award.

Bloomgarden's October 31, 1996 report is on point. That report states that as of October 31, 1996, the plaintiff was unable to return to work as a result of her work-related injury. A complete review of his report does not, however, support a finding of a total disability caused by the work-related back injury. Although Bloomgarden stated in his report that "[the plaintiff's] long-term prospects for returning to work are close to nil, and I feel that this is a work-related injury," he went on to state that "it is difficult for me, however, to tell . . . what degree is preexisting and what degree is current from the August [19, 1996] injury." He also stated that "she certainly has preexisting lumbar degenerative disease . . . [from] her years of working as a [certified nurse's assistant]. At this point, it is unjustifiable to suggest a disability assessment, and that includes a preexisting disability assessment." That statement reflects uncertainty, in the first instance, over the cause of the plaintiff's back injury.

The plaintiff bore the burden of proving an incapacity to work, and "total incapacity becomes a matter of continuing proof for the period claimed." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 42, 668 A.2d 1346 (1996). The plaintiff argues that nothing in the record supports the board's decision because nothing in the record reflects a change in her back condition. The law does not require the trust to prove that the plaintiff was not totally disabled because the plaintiff did not prove the existence of a total disability caused by her work-related injury in the first instance. No competent evidence in the record supports a finding that the plaintiff suffered from a total disability from the date of her work-related injury on

August 19, 1996, until February 18, 1998. Any such con-
clusion could only result from "inference[s] illegally
or unreasonably drawn from" the subordinate facts;
(internal quotation marks omitted) *Kolomiets* v. *Syncor
International Corp.*, 252 Conn. 261, 265, 746 A.2d 743
(2000); because the competent medical evidence does
not support the conclusion that the plaintiff was totally
disabled in that time period.

Our review of the record discloses that the plaintiff's
medical providers found that she could perform some
work-related duties, albeit sedentary duties, as early as
October 2, 1996, and November 13, 1996. Furthermore,
as previously discussed, the plaintiff's medical records
reflect uncertainty over the cause of her medical disabil-
ity. Although the plaintiff's medical records document
many of her complaints, nowhere does a competent
medical provider state with reasonable medical cer-
tainty that work-related lumbar instability caused her
to fall and injure her leg. The limited number of medical
reports in the record concerning the plaintiff's leg injury
does not indicate either that she could not return to
work in any capacity or that a work-related injury ren-
dered her totally disabled. The competent evidence in
the record does not support an award of disability bene-
fits following the plaintiff's leg injury.

### III

The plaintiff next claims that the board improperly
reversed the commissioner's findings and award with-
out remanding the matter to him for further proceed-
ings. We disagree.

The commissioner afforded the plaintiff a full oppor-
tunity to litigate her claims that her back injury caused
lumbar instability which, in turn, resulted in her leg
injury and that she suffered from a total disability until
the date of the commissioner's award. The plaintiff
introduced hospital records, therapy records, radiologi-

cal examination records, and reports and treatment notes authored by her treating physicians. As we previously discussed at length, the plaintiff failed to satisfy her burden of proving her case with competent evidence.

Our Supreme Court has stated that even in workers' compensation cases, the interests of a claimant are often best served by a termination of legal proceedings, even where the termination is adverse to him or her. *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 34, 170 A. 146 (1934). In cases where a claimant has failed to establish his right to compensation benefits, however, a remand may be proper. "The test is, does it appear reasonable to believe that the plaintiff can prove a case . . . or is there a reasonable prospect that she can." (Citations omitted; internal quotation marks omitted.) *Murchison* v. *Skinner Precision Industries, Inc.*, supra, 162 Conn. 153; see also *Kearns* v. *Torrington*, 119 Conn. 522, 531, 177 A. 725 (1935). It also is well established that a party to a workers' compensation case "is not entitled to try his case piecemeal, to present a part of the evidence reasonably available to him and then, if he loses, have a rehearing to offer testimony he might as well have presented at the original hearing. . . . Where an issue has been fairly litigated, with proof offered by both parties, a claimant should not be entitled to a further hearing to introduce cumulative evidence, unless its character or force be such that it would be likely to produce a different result." (Internal quotation marks omitted.) *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 542, 612 A.2d 1222 (1992).

In the present case, the plaintiff did not alert the commissioner, the board or this court to the existence of any additional evidence that would likely change the board's conclusion, or establish a likelihood that she can produce such evidence, if given the chance to do so. If the plaintiff possessed competent medical evi-

dence that demonstrated the causal connection she alleges exists between her back injury and her leg injury, or that her back injury caused a total disability that lasted after her leg injury occurred, it was incumbent on her to present such evidence during her benefits hearing. Given the uncertainty reflected in the plaintiff's medical records regarding the cause of her injuries, we cannot say that it is reasonable to believe that the plaintiff can prove her case at another hearing. The board properly refused to remand the case for further proceedings.

## CROSS APPEAL

In its cross appeal, the trust argues that it terminated Special Attention's workers' compensation insurance policy effective August 17, 1996. It argues, therefore, that either Special Attention or the Second Injury and Compensation Assurance Fund is liable to pay any applicable benefits owed to the plaintiff arising out of her August 19, 1996 back injury. We disagree.

The following additional facts and procedural history are necessary for our resolution of this issue. On December 29, 1995, the trust and Special Attention renewed a one year agreement whereby the trust would provide workers' compensation insurance coverage to Special Attention's employees, and Special Attention would pay to the trust premium installments each month.

The commissioner made, and the board upheld, the following findings of fact with respect to this issue. On July 18, 1996, the trust sent Special Attention a letter indicating that the trust would cancel its policy in thirty days if Special Attention did not pay past due premiums.[3] The trust sent a copy of that letter to the chairman

[3] The trust's July 18, 1996 letter to Special Attention stated in relevant part: "Please be advised that Special Attention Health Services, Inc., and Special Attention, Inc., now has an overdue balance. This notice is in accordance with The Connecticut Hospital Association Workers' Compensation Trust Board of Trustees Delinquent Payment Policy.

of the workers' compensation commission (chairman). On August 16, 1996, the trust sent a letter to Special Attention, stating that the trust would cancel the policy on the following day because Special Attention had failed to pay its past-due premium payments.[4] The trust also sent a copy of that letter to the chairman. Special Attention's chief financial officer testified that Special Attention did not make any premium payments after July, 1996, and that on August 29, 1996, Special Attention obtained another policy from a different insurance company. The commissioner found that the trust's July 18, 1996 letter constituted a warning that the policy would be canceled if past-due premiums were not paid, and that the trust's August 16, 1996 letter constituted a notice of cancellation. The commissioner applied General Statutes § 31-348[5] and concluded that the trust's cancellation did not take effect until August 31, 1996, fifteen days after the trust's notice of cancellation. Accordingly, the commissioner found that the trust pro-

"You are hereby given notice that *coverage will automatically terminate at 12:01 a.m., thirty (30) days following the date of this notice* unless the entire outstanding balance due the Trust is received by that date. The outstanding balance shown above includes both the past due balance and the current month's bill.

"A copy of the current delinquent payment policy as adopted by the Board of Trustees is enclosed. It is very important that you note the consequences of future late payments. . . ." (Emphasis in original.)

[4] The trust's August 16, 1996 letter stated in relevant part: "Please be advised the above subject policy will be cancelled effective August 17, 1996 at 12:01 a.m. due to non-payment of premium in the amount of $21,452.73."

[5] General Statutes § 31-348 provides: "Every insurance company writing compensation insurance or its duly appointed agent shall report in writing or by other means to the chairman of the Workers' Compensation Commission, in accordance with rules prescribed by the chairman, the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy. The cancellation of any policy so written and reported shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman. Any insurance company violating any provision of this section shall be fined not less than one hundred nor more than one thousand dollars for each offense."

vided workers' compensation insurance to Special Attention on August 19, 1996, the date on which the plaintiff injured her back.

The trust argues that the board improperly upheld the commissioner's finding that its July 18, 1996 letter constituted a mere warning that it would cancel Special Attention's policy rather than concluding that the letter constituted a notice of cancellation. The trust character- izes its July 18, 1996 letter as a notice of cancellation and its August 16, 1996 letter as a mere reiteration of its cancellation notice. The trust first argues that its July 18, 1996 letter satisfied all relevant legal require- ments. The trust also argues that evidence demon- strated that Special Attention believed that it was responsible for the benefits owed to the plaintiff as a result of her back injury and that Special Attention administered the plaintiff's claim, paying her weekly disability benefits from the date of her filing until the date of the commissioner's award. Additionally, the trust claims that Special Attention representatives "understood and accepted" that the trust had canceled the policy effective August 17, 1996. In that regard, the trust notes that Special Attention's chief financial officer testified that he believed that the July 18, 1996 letter constituted a notice of cancellation and that Spe- cial Attention obtained new insurance coverage with another provider, effective August 29, 1996.

Section 31-348[6] provides that the cancellation of a workers' compensation insurance policy shall be in writing and will be effective fifteen days after it is filed with the chairman. There is no dispute that the trust filed its July 18, 1996 letter as well as its August 16, 1996 letter with the chairman. Although the statute establishes the procedural process of a cancellation, the present dispute rests on the words of the cancellation

[6] See footnote 5.

notice itself. The trust admits in its principal brief that "a sufficient notice of cancellation must explicitly and unequivocally state that the policy is canceled as of a certain date . . . ." Our Supreme Court has explained the importance of providing sufficient notice of cancellation by noting that "[workers'] compensation is a peculiar type of insurance, and that to every policy each employee of the insured is in a very real sense a party . . . [T]he purpose of the notice was to make an authentic record so that any employee or prospective employee might ascertain whether the employer is insured, and, if so, in what company, and that the insurer is estopped to deny the truth of the formal record, whether or not the particular employee whose rights are in question examined the files where such records are kept; and . . . that, as the record stated that the policy was in effect, the insurer could not deny that this was so." *Rossini* v. *Morganti*, 127 Conn. 706, 708, 16 A.2d 285 (1940). That rule protects employees' interests by affording them access to accurate records filed in the chairman's office about an employer's compensation coverage.

The board distinguished the trust's July 18, 1996 letter from the proper notice of cancellation discussed in *O'Connell* v. *Indian Neck General Store*, 6 Conn. Workers' Comp. Rev. Op. 42 (1988). The insurer's cancellation notice in *O'Connell* stated that it was effective "as to accidents occurring after 12:01 of the 10th day of June, 1985." (Internal quotation marks omitted.) Id., 43. The trust claims that its July 18, 1996 notice could be characterized as similarly "prospective." We disagree. What the statute and case law require is a certain and unequivocal cancellation specifying an ascertainable date and time when cancellation will occur, not a specific date and time when cancellation might become effective if certain events do or do not transpire.

Both parties cite case law from various jurisdictions to aid in our resolution of this issue. Our view accords with the reasoning set forth in *Benefit Trust Life Ins. Co.* v. *Commissioner of Insurance*, 142 Wis. 2d 582, 419 N.W.2d 265 (App. 1987), rev. denied, 144 Wis. 2d 956, 428 N.W.2d 554 (1988). In that case, the Court of Appeals of Wisconsin reasoned that in the insurance policy context, "[t]o be effective, a notice of cancellation must be unambiguous and unequivocal; it must do more than merely threaten to cancel." Id., 592. Contrary to the trust's arguments, its July 18, 1996 letter is not analogous to notice of a cancellation that will occur a specified period of time after the cancellation notice is received by the insured. The occurrence of an event, i.e., the payment of past due premiums, could have negated the attempted cancellation at issue in the present case. On the basis of the terms of the July 18, 1996 letter, Special Attention possessed the authority to negate the cancellation altogether. A third party examining the records in the commissioner's office could not ascertain whether that event occurred. Turning to the July 18, 1996 letter,[7] we agree with the board's conclusion that it was "merely a warning that cancellation *might* occur." (Emphasis in original.) Section 31-348 does not require or suggest a follow-up notice of cancellation. The fact that the trust sent a second letter to Special Attention on August 16, 1996 supports the argument that the trust's initial letter did not act as a final cancellation notice. Special Attention's understanding of when its policy was canceled is not persuasive evidence of when the cancellation legally occurred. As previously discussed, § 31-348 has been interpreted as protecting employees or anyone examining coverage records in the commissioner's office. In that regard, an employer's understanding as to when coverage terminated is largely irrelevant; the cancellation occurs in accordance with the statute.

---

[7] See footnote 3.

The trust's August 16, 1996 letter unequivocally canceled Special Attention's policy. The board properly ruled that Special Attention had coverage under the policy for fifteen days after the trust sent that letter and that the trust was, therefore, responsible for any workers' compensation benefits owed to the plaintiff arising out of her compensable August 19, 1996 injury.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.