ANTONIO JOHNSON *v.* STATE OF CONNECTICUT
(AC 21623)

Foti, Mihalakos and Flynn, Js.

(*One judge dissenting*)
Argued September 24—officially released December 18, 2001

*Mark E. Blakeman,* for the appellant (plaintiff).

*Michelle D. Truglia,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. In this action, the plaintiff, Antonio Johnson, appeals from the judgment of the workers' compensation review board (board) reversing the decision of the workers' compensation commissioner (commissioner) to grant the plaintiff full salary benefits under General Statutes § 5-142 (a).[1] On appeal, the plain-

---

[1] General Statutes § 5-142 provides in relevant part: "Disability compensation. (a) If any member . . . of any correctional institution . . . sustains any injury (1) while . . . in the actual performance of . . . guard duties . . . or while attending or restraining an inmate of any such institution or as a result of being assaulted in the performance of his duty and (2) that is a direct result of the special hazards inherent in such duties, the state shall pay all necessary medical and hospital expenses resulting from such injury. If total incapacity results from such injury, such person shall be removed from the active payroll the first day of incapacity, exclusive of the day of injury, and placed on an inactive payroll. He shall continue to receive the full salary which he was receiving at the time of injury subject to all salary benefits of active employees, including annual increments, and all salary adjustments, including salary deductions, required in the case of active employees, for a period of two hundred sixty weeks from the date of the beginning of such incapacity. Thereafter, such person shall be removed

tiff contends that the board improperly (1) reversed the commissioner's findings that (a) the plaintiff was restraining an inmate and (b) his injuries were a direct result of the special hazards inherent in his guard duties, and (2) abused its discretion in finding facts and drawing unreasonable inferences contrary to those found by the commissioner. We disagree and affirm the board's decision.

The following facts and procedural history are relevant to the disposition of the plaintiff's appeal. Since April, 1989, the plaintiff has been employed by the defendant state of Connecticut in the department of correction as a correction officer at the Osborn Correctional Institution (institution) in Somers. On August 11, 1996, the plaintiff was assigned to C block shower duty at the institution. That morning an inmate stepped out from the shower onto a tier, slipped on the floor, and, in an attempt to avoid falling, grabbed onto the plaintiff, who was passing by at the same moment. The plaintiff in turn grabbed onto the inmate and they fell awkwardly to the floor of the tier. As a result, the plaintiff suffered bilateral inguinal hernias, which have left him totally incapacitated at various times and unable to work. The plaintiff filed an incident report on August 12, 1996, but he did not file a disciplinary report on the inmate.[2] Subsequently, the plaintiff filed a workers' compensation claim under General Statutes § 31-307[3] that was

from the payroll and shall receive compensation at the rate of fifty per cent of the salary which he was receiving at the expiration of said two hundred sixty weeks so long as he remains so disabled . . . ."

[2] The defendant requires a correction officer to file a disciplinary report on an inmate who has taken any hostile action against the officer. The plaintiff did not file such a report because, according to his testimony, the incident was an accident and not an assault.

[3] General Statutes § 31-307 provides in relevant part: "Compensation for total incapacity. (a) If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of his average weekly earnings as of the date of the injury . . . and the compensation shall not continue longer than the period of total incapacity."

accepted by the defendant. Accordingly, the plaintiff has received 75 percent of his full salary during periods of total disability from work.

The plaintiff then filed a claim for full salary benefits under § 5-142 (a). The commissioner conducted formal hearings on that claim on May 18, 1999, and August 12, 1999. On the basis of the plaintiff's testimony, the commissioner found, inter alia, that the plaintiff was "surprised by the inmate" and that he sustained compensable injuries "while in the actual performance of his duties, and while grabbing and restraining an inmate." Accordingly, the commissioner found that the plaintiff was entitled to the benefit of his full salary while incapacitated because his injuries were "a direct result of the special hazards inherent in [his] guard duties as defined in [§ 5-142 (a)]."

The defendant petitioned the board for review on December 7, 1999. Meanwhile, on December 15, 1999, the defendant filed a motion to correct the commissioner's findings of fact and award. In that motion, the defendant asked that the commissioner remove all reference to the word "restrained" or other variations of the word. The defendant also requested that the commissioner eliminate the word "surprised" and expressly delineate the special hazards the plaintiff faced during the incident. Further, the defendant sought to eliminate the findings that the plaintiff's injuries were a direct result of any such hazards and the conclusion that the plaintiff was entitled to full salary benefits under § 5-142 (a). The commissioner denied the motion on December 23, 1999.

In its petition to the board, the defendant claimed that the commissioner improperly (1) denied its motion to correct, (2) found that the plaintiff was restraining the inmate at the time of injury, (3) failed to delineate what special hazards inherent in the plaintiff's duties

were encountered at the time of injury, (4) assumed facts not in evidence, (5) failed to include material and undisputed facts in his findings, (6) applied the law to the facts through unreasonable inferences and (7) found that the plaintiff was entitled to his full salary as compensation under § 5-142 (a).

On January 25, 2001, the board rendered a decision agreeing with the defendant, and reversing the commissioner's findings and award. The board concluded that the record contained no proof that supported the commissioner's conclusions that the plaintiff was injured as a direct result of a special hazard involved with his duties or that he had restrained the inmate within the meaning of § 5-142 (a). Instead, because the event was an accident and not an attack, the board concluded that having to break someone's fall unexpectedly could be deemed reasonably to be within the plaintiff's routine duties, as with any job, but that it cannot be categorized as a special hazard concomitant with those duties. Consequently, the board reversed the commissioner's decision, leaving the plaintiff with 75 percent of his full salary for periods of incapacity under § 31-307. The plaintiff subsequently appealed on February 13, 2001.

Our standard of review in workers' compensation appeals is well established. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the review board nor this court has the power to retry facts. . . . [A]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board." (Internal quotation marks omitted.) *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 445, 774 A.2d 992 (2001). "Although it is clear . . . that the board is prohibited from retrying the case or

substituting its inferences for those drawn by the commissioner, the board certainly [is] free to examine the record to determine whether competent evidence supported the commissioner's findings, inferences drawn from such findings and conclusions. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. . . . Inferences may only be drawn from competent evidence. Competent evidence does not mean any evidence at all. It means evidence on which the trier properly can rely and from which it may draw reasonable inferences." (Citation omitted; internal quotation marks omitted.) Id., 450–51.

I

The plaintiff's first claim centers on two findings made by the commissioner that culminated in an award to the plaintiff of full salary benefits. In the absence of either of those findings, the requirements of § 5-142 (a)[4] cannot be met, and the plaintiff cannot obtain the desired benefits. On appeal to the board, the defendant argued that both findings were incorrectly arrived at on the bases of incompetent evidence and misapplication of the law to the facts. The board agreed with the defendant and reversed the commissioner's award. We agree with the board.

A

The plaintiff first argues that the board improperly reversed the commissioner's finding that the plaintiff was restraining the inmate at the time of the plaintiff's injuries. We disagree. Although the defendant conceded in its brief that the plaintiff met the first prong of the

---

[4] See footnote 1. The plaintiff in this case had to show that he sustained injury while (1) either attending or restraining an inmate *and* (2) that the injury was a direct result of a special hazard inherent in his guard duties. See General Statutes § 5-142 (a).

test under § 5-142 (a),[5] it did not concede that the commissioner correctly found that the plaintiff had been restraining the inmate rather than merely holding on to him as they fell to the floor. As the trier of fact, the commissioner is entitled to make only *reasonable* findings upon *competent* evidence. See id., 451. "On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award." *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 739, 774 A.2d 1009 (2001). The board could not retry the case to determine that no such proof existed on the record, but it was within the board's power to reverse a finding for lack of competent evidence. See *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 450–51. The board's determination that there was a lack of evidence was not tantamount to retrying the facts of this case.

The board reviewed the record and determined, consistent with the legislative history of § 5-142 (a),[6] that the commissioner could not have found reasonably or fairly from the evidence that the plaintiff had restrained the inmate. The board further determined that "[t]here is no testimony in the record to support the conclusion that the [plaintiff] was 'restraining' the inmate . . . ." The board, however, did not make its own finding of fact. While we must give great weight to the construction given to the workers' compensation statutes by

[5] The defendant conceded that the plaintiff was attending to the inmate while in the performance of his guard duties. Such a finding by the commissioner, upon competent evidence, would have met the first prong of the test under General Statutes § 5-142 (a).

[6] The legislature amended General Statutes § 5-142 (a) by enacting Public Acts 1991, No. 91-339, to close a loophole that was made obvious in *Lucarelli* v. *State*, 16 Conn. App. 65, 546 A.2d 940 (1988), in which a correction officer was allowed to collect full salary benefits for an injury that was not related to a special hazard inherent in his job. The amendment added the second prong of the test now used in § 5-142 (a), which requires an injury to be the direct result of such a special hazard.

the commissioner and the board, we conclude that the board's determination was reasonable in light of the record and that the commissioner's findings were not sustainable on the same evidence. Therefore, we conclude that the board properly decided that the commissioner's finding was unreasonably drawn from the evidence before him.

## B

The plaintiff next argues that the board improperly reversed the commissioner's finding that the plaintiff was injured by a special hazard inherent in his guard duties. We do not agree. As noted in part I A, the board was empowered to determine whether the record supports the commissioner's finding with competent evidence. The board determined that "the record contains no proof that catching hold of people who slip is an especially hazardous aspect of a state prison guard's job." The board further observed that "almost any employee in any business might be placed in the unexpected situation of having to break someone's fall . . . ." As a result, the board concluded that the commissioner's finding in this regard "lack[ed] a vital subordinate factual element." Those determinations are not findings of fact by the board; rather, they are summations of the competency of the evidence before the commissioner. Again, we allot the decisions of the commissioner and the board their proper weight in light of the record. We conclude, therefore, that the board properly determined that the commissioner could not have found reasonably from the evidence that the plaintiff was injured by a special hazard inherent in his guard duties.

## II

The plaintiff's last claim is that the board abused its discretion in finding facts and drawing unreasonable inferences contrary to those found by the commis-

sioner. We disagree. Our discussion in part I controls the determination of the plaintiff's claim. The plaintiff is under the misconception that the board's reversal of the commissioner's decision means that it made its own findings of fact. That is incorrect. The board's decision to reverse the commissioner's decision was not based on its own findings of fact or inferences, but rather on a lack of competent evidence with which it could find support for the commissioner's findings and award. As a result, the board's decision fell squarely within the ambit of its authority and, accordingly, we conclude that it did not abuse its discretion.

The decision of the workers' compensation review board is affirmed.

In this opinion FOTI, J., concurred.

FLYNN, J., dissenting. I respectfully dissent because I believe that the record fully supports the decision of the workers' compensation commissioner (commissioner) that the plaintiff's injury occurred while "restraining an inmate" and resulted from a special hazard inherent in the duties of a prison guard. Consequently, I would conclude that the compensation review board (board) abused its discretion in reversing the commissioner's decision.

"[T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . The commissioner may base his or her findings on circumstantial evidence . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Chappell* v. *Manafort Bros., Inc.*, 63 Conn. App. 630,

633, 778 A.2d 225, cert. denied, 257 Conn. 911, 782 A.2d 133 (2001). "Neither the review board nor this court has the power to retry facts." (Internal quotation marks omitted.) *Diluciano* v. *State Military Dept.*, 60 Conn. App. 707, 711, 760 A.2d 1019 (2000), cert. denied, 255 Conn. 926, 767 A.2d 98 (2001).

I first turn to the law pertaining to the plaintiff's eligibility for workers' compensation benefits pursuant to General Statutes § 5-142 (a). "[T]o be eligible for benefits under § 5-142 (a), the state employee must (1) be a member of a specified group of state employees, (2) be engaged in the performance of a specified duty, and (3) the injury sustained must be as a result of 'special hazards inherent in such duties.' " *Stuart* v. *Dept. of Correction*, 221 Conn. 41, 42 n.1, 601 A.2d 539 (1992).

In the present case, the board had no quarrel with the commissioner's first finding that, as a prison guard, the plaintiff was a member of an enumerated group of employees whom the legislature intended to benefit by its enactment of § 5-142 (a). The board and the majority first find fault with the commissioner's second necessary finding that the plaintiff was entitled to full compensation because he was injured while he was "restraining an inmate" within the meaning of § 5-142 (a) (1). The board concluded, and the majority agrees, that the finding was not supported by evidence in the record. I disagree for three reasons.

First, there was evidence in the record to support the commissioner's finding that the injury of the plaintiff occurred while he was "restraining an inmate." General Statutes § 5-142 (a) (1) does not define the term "restraining." "When the legislature has not defined a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Connecticut Natu-*

*ral Gas Corp.* v. *Dept. of Consumer Protection*, 43 Conn. App. 196, 200, 682 A.2d 547, cert. denied, 239 Conn. 938, 684 A.2d 707 (1996). According to Webster's Third New International Dictionary, "restrain" means "to hold (as a person) back from some action, procedure, or course: prevent from doing something (as by physical or moral force or social pressure) . . . ." At the hearing, the plaintiff testified that he was surprised when the inmate grabbed him while stepping from the shower onto the tier and that he, the plaintiff, instinctively grabbed and held the inmate, as he was trained to do, in an effort to control the situation and to ensure that no one, including himself or the inmate, was hurt. The plaintiff also testified that he simply responded as he was trained to do and that he would have responded in the same way had the inmate come out of the shower with a weapon. Further, the plaintiff testified that he did not determine that the inmate had slipped until the two of them were already physically entangled.[1] It was reasonable for the commissioner to find, on the basis of that testimony, that the plaintiff sustained his injury while "restraining an inmate," that is, that the injury was

---

[1] The factual findings of the commissioner state in relevant part:

"3. The Claimant was in the performance of his guard duties when the incident occurred on August 11, 1996: It happened when an inmate stepped out onto the tier after his shower. The inmate stumbled and grabbed hold of the Claimant and the Claimant grabbed hold of him.

"4. The Claimant responded as he had been trained and grabbed and restrained the inmate when he was physically grabbed by the inmate.

"5. The Claimant was surprised by the inmate as he came out of the shower onto the tier. He testified that his reaction would have been the same no matter what the inmate was doing, which was to grab hold of the inmate and restrain the inmate and control the situation.

"6. At the time of the incident, the Claimant did not know what the inmate's intentions were when he was grabbed. He testified he grabbed and restrained the inmate as best he could.

"7. When the incident was over, the Claimant assessed the situation and did not feel that the inmate acted with intent or malice towards him and, therefore, the Claimant did not write up a disciplinary report on the inmate. . . ."

sustained while the plaintiff was employing physical force to hold the inmate in an effort to prevent him from taking some action or course.

Second, the statute does not require that a restraint occur as a result of an intended attack. The board determined, and the majority implicitly agrees, that the plaintiff could not have been "restraining an inmate" because the physical encounter between the two was the product of an accident, rather than an attack, and because there was no finding as to the nature of the inmate's conduct when he fell.[2] The board further determined that such a finding should be required in future cases. Contrary to the interpretation of the board, the factual finding to be made by the commissioner pursuant to § 5-142 (a) was whether a "restraint" occurred and not, in hindsight, whether the conduct of the inmate that prompted the restraint was made without menacing intent. Section 5-142 (a) contains no language that could fairly be interpreted to require such a finding. "We refrain from reading into statutes provisions that are not clearly stated and interpret statutory intent by referring to what the legislative text contains, not by what it might have contained." (Internal quotation marks omitted.) *State* v. *Stewart*, 64 Conn. App. 340, 349, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). The record shows that the plaintiff was "surprised by the inmate." The commissioner could have drawn a permissible inference that in light of that surprise the plaintiff did not know what the inmate was doing when he grabbed the plaintiff. The plaintiff's grab-

---

[2] The statute does not require the filing of a disciplinary report to prove that a plaintiff was guarding, attending or restraining an inmate. Further, we should not encourage a correction officer to file a disciplinary report against an inmate in a situation in which such a report is not warranted simply to ensure that he or she will be eligible for full salary benefits under § 5-142 (a). In the present case, the plaintiff did not file a disciplinary report when, *after* evaluating the whole incident after it occurred, he concluded that the inmate meant him no harm, which is to his credit.

bing of the inmate served to stop him from either a fall or a malicious attack.

Furthermore, the principles of statutory construction demonstrate that the board's interpretation of § 5-142 (a) cannot be correct. "[E]lementary rules of statutory construction [require] the presumption that the legislature did not intend to enact superfluous legislation. . . . [W]hen construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible." (Citation omitted; internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 677, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). General Statutes § 5-142 (a) (1) provides in relevant part that a plaintiff must sustain an injury "while . . . restraining an inmate . . . *or as a result of being assaulted* in the performance of his duty . . . ." (Emphasis added.) An assault is an attack. If the legislature had intended to restrict eligibility for full salary benefits to only those situations in which an attack has occurred, the language, "as a result of being assaulted," would have been sufficient; the phrase "while restraining an inmate" would be unnecessary and mere surplusage. The rules of statutory construction do not countenance such an interpretation.

Third, the defendant concedes that even if the plaintiff was not "restraining" the inmate, he was engaged "in the actual performance of . . . guard duties . . . or while attending . . . an inmate"; General Statutes § 5-142 (a); when the injury occurred. Thus, by the defendant's own concessions, the plaintiff has satisfied the first two requirements under § 5-142 (a): The plaintiff was a member of a class of employees whom the legislature intended to be eligible for benefits, and he sustained his injury while engaged in one of the statutorily specified duties. The dispositive issue, therefore, is

whether the injury resulted from the special dangers inherent in such duties.

The majority concludes that the commissioner could not reasonably have found from the evidence that the plaintiff's injury was the result of a special hazard inherent in one of his statutorily enumerated duties. In other words, the majority agrees with the board's conclusion that the plaintiff's injury was not a direct result of a hazard inherent "in the actual performance of . . . guard duties" or in "attending" an inmate because, in the majority's reasoning, having to break someone's fall unexpectedly can be deemed to be within the plaintiff's routine duties but cannot reasonably be categorized as a special hazard inherent in such duties. I respectfully disagree because of the surprise that existed and because of the danger inherent in such a workplace.

The plaintiff here was not just breaking *someone's* fall but, rather, he was engaged in a physical encounter with a prison inmate, which was later determined to result from the inmate's slip and fall. As this court stated in *Lucarelli* v. *State*, 16 Conn. App. 65, 69, 546 A.2d 940 (1988), "[t]he classifications of state employees enumerated in [§ 5-142 (a)] share a common characteristic: these employees, in the daily course of performing their duties, work in an atmosphere sometimes charged with emotion and stress, and face the possibility of confrontations with inmates . . . which confrontations often result in violence." Thus, the hazard faced by those employees is the chance of being injured in a confrontation with an inmate. It is true, as the majority points out, that § 5-142 (a) was amended by the legislature through its ratification of No. 91-339 of the 1991 Public Acts in response to this court's decision in *Lucarelli*, and, consequently, the statute as amended requires proof not only that a plaintiff was engaged in the actual performance of statutorily recognized duties but also that the injury that the plaintiff sustained was the result

of one of the dangers inherent in such duties. That additional requirement of proof, however, does not change the fact that this court previously has recognized that the risk of physical confrontation with an inmate is a hazard inherently present in the performance of a prison guard's duties. Because the plaintiff could not know the true intentions of the inmate in a split second, the plaintiff used a prescribed hold that led to his injury. The plaintiff in this case was involved in and was injured as a result of such a confrontation. It matters not that the inmate's physical contact with the plaintiff was later determined to be innocuous.

The purpose of the legislature's enactment of § 5-142 (a) was to recognize that certain employees, such as prison guards, deal with a class of society that a court has determined needed to be removed from society to protect law-abiding citizens from them. Jailing dangerous convicts removes the danger to society at large but, at the same time, concentrates that danger in the prisons where guards work. The danger inherent in this prison atmosphere caused the plaintiff's response and his injury.

Moreover, I find no case, and the defendant has cited none, in which this court or our Supreme Court has construed § 5-142 (a) subsequent to its being amended. "A state agency is not entitled . . . to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Diluciano* v. *State Military Dept.*, supra, 60 Conn. App. 711. This appeal presents such a situation and, accordingly, we need not defer to the decision of the board. Our review is, therefore, plenary. As such, I would construe sudden

physical confrontations with inmates to be within the special hazards inherent in guarding, restraining or attending prison inmates, even where those confrontations later are determined to be caused by an accident, such as a fall, rather than from menacing intent.

Finally, the majority concludes that the board's decision to reverse the finding of the commissioner did not result from the board's own impermissible fact-finding or inferences. Rather, the majority concludes that the commissioner's findings and award were not supported by competent evidence in the record. It cannot be over-emphasized that where the facts in the record allow for various inferences, the inference of the commissioner must stand unless it results from a misapplication of the law to the facts or from an inference unreasonably drawn. *Chappell* v. *Manafort Bros., Inc.*, supra, 63 Conn. App. 633.

In the present case, the commissioner inferred from the facts presented at the hearing that when the inmate grabbed hold of the plaintiff, the plaintiff, in turn, grabbed and restrained the inmate as he was trained to do, in order to retain control of the situation, and that such actions on the part of the plaintiff constituted a restraint. This was a reasonable inference. While the board was free to disagree with the inferences drawn from those facts, it was not free to override the commissioner's findings unless his inferences were unreasonably or illegally drawn. That was not the case here and, accordingly, the board, contrary to law, abused its discretion in drawing its own inferences from the facts presented at the hearing. I would reverse the ruling of the board and affirm the commissioner's findings and award.