### JAMES KEENAN *v.* UNION CAMP CORPORATION ET AL.
### (AC 17197)

O'Connell, C. J., and Spear and Hennessy, Js.

Submitted on briefs March 5—officially released June 30, 1998

*Guy L. DePaul,* for the appellant (plaintiff).

*Scott Wilson Williams,* for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, James Keenan, appeals from the decision of the workers' compensation review board (board) reversing a finding and award that was rendered in his favor by the workers' compensation commissioner. On appeal, Keenan claims that the board improperly concluded that the commissioner's decision was not premised on competent evidence. We agree and reverse the board's decision.

The record reveals the following relevant facts and procedural history. On September 30, 1993, Keenan sustained a compensable injury to his back and groin while at his workplace. As a result of this undisputed injury, he came under the care of Michael Craig, an orthopedist. Subsequently, on December 20, 1993, Keenan, while standing at the top of a staircase at his residence, experienced a weakness in and "giving out" of his leg, and he fell down the stairs, hitting his head. Because it was Craig's opinion that Keenan had suffered a traumatic brain injury as a result of the fall on December 20, 1993, Craig referred him to Neil Culligan, a neurologist.[1] In a

---

[1] The following testimony is excerpted from Craig's July 12, 1995 deposition:

"Q. Doctor, just going back to your February 2, [1994] office note, do you stand by your statement in that office note, which we were talking about, indicating, 'He's got a normal neurologic examination in terms of his peripheral nerves; however, he has had the diagnosis of traumatic brain injury secondary to a fall,' this [meaning that] the fall in December of 1993 was secondary to leg weakness from a fall at work in September of 1993?

"A. Yes.

"Q. Would that be your medical opinion based upon a reasonable degree of medical probability?

"A. Yes.

"Q. And as a result of that fall in December of 1993 did Mr. Keenan suffer a traumatic brain injury?

letter to Craig dated January 20, 1994, and in subsequent letters to Liberty Mutual Insurance Company dated January 27 and September 9, 1994, Culligan stated that Keenan had suffered a traumatic brain injury as a result of his fall on December 20, 1993, and that this fall had been caused by leg weakness that resulted from the workplace injury of September, 1993.[2] The defendant Union Camp Corporation (Union), Keenan's employer, denied responsibility for Keenan's traumatic brain injury, arguing that Keenan's fall down the stairs on December 20, 1993, was not causally related to his compensable back injury of September 30, 1993. On October 25, 1995, the commissioner rendered a finding and award in favor of Keenan. Union then appealed to the board, which reversed the commissioner's decision, concluding that the decision was not premised on competent evidence. This appeal followed.

It is well settled in workers' compensation cases that the injured employee bears the burden of proof, not only with respect to whether an injury was causally connected to the workplace, but that such proof must be established by competent evidence. *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 151, 291 A.2d 743 (1972). Further, "[t]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the

"A. Yes.

"Q. And as a result of that traumatic brain injury did you refer him to Dr. Neil Culligan?

"A. Yes. I referred him to a neurologist. It's my understanding he saw Dr. Culligan in the emergency room as a result of severe headaches in early January."

[2] In his letter of January 20, 1994, Culligan outlined many of Keenan's symptoms, including dizziness, memory loss, severe headaches and depression, all of which Culligan characterized as secondary to weakness in Keenan's leg from the original workplace injury of September, 1993.

subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988); *Rogers* v. *Laidlaw Transit, Inc.,* 45 Conn. App. 204, 206, 695 A.2d 1071 (1997).

"[I]n determining whether a particular injury arose out of and in the course of employment, the [commissioner] must necessarily draw an inference from what [she] has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by [§ 31-301-8 of the Regulations of Connecticut State Agencies]. If supported by evidence and not inconsistent with the law, the [commissioner's] inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the [commissioner] is factually questionable."[3] (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* supra, 207 Conn. 539–40; see also *Epps* v. *Beiersdorf, Inc.,* 41 Conn. App. 430, 434, 675 A.2d 1377 (1996).

According to the specific provisions of § 31-301-8 of the Regulations of Connecticut State Agencies, the

---

[3] Section 31-301-8 of the Regulations of Connecticut State Agencies provides in relevant part: "Ordinarily, appeals are heard by the compensation review [board] upon the certified copy of the record filed by the commissioner. In such cases the [board] will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusion reached. *It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. . . .*" (Emphasis added.)

board "cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses." Our review of the board's May 2, 1997 decision reveals that despite the board's assertion that the *nature*, or competency, of the evidence in this case is at issue, the board's decision focuses on the issues of the weight of the evidence and the credibility of witnesses. Specifically, the board concedes in its decision of May 2, 1997, that both Craig and Culligan agreed that Keenan's fall down the stairs resulted from his work injury in September, 1993, "which caused back pain, leg weakness and imbalance." The board improperly concluded that because "the [commissioner] did not cite any of Dr. Culligan's reports in her findings, [the board] cannot rely on those reports as a basis for her award."[4] Although the board maintains that the evidence that was considered by the commissioner in this case was incompetent, we are not persuaded.

A workers' compensation award must be based on competent evidence. *Cooke* v. *United Aircraft Corp.*, 152 Conn. 214, 216, 205 A.2d 484 (1964); *Zawisza* v. *Quality Name Plate, Inc.*, 149 Conn. 115, 116, 176 A.2d 578 (1961). In determining whether evidence is competent in such a context, our Supreme Court has held that "the opinions of experts [are] to be received and considered as in other cases generally but that the opinion of a physician which is based wholly or partly on statements and symptoms related to the physician by the patient on a personal examination is inadmissible where the examination was made for the purpose of qualifying the physician to testify as a medical expert."

---

[4] In its May 2, 1997 decision, the board stated that the commissioner reached her decision by relying solely on the testimony of Craig. The board made this statement because the October 25, 1995 finding and award specifically refers only to the testimony of Craig, and makes no mention of whether the commissioner likewise credited Culligan's reports, which were also admitted into evidence.

(Internal quotation marks omitted.) *Cooke* v. *United Aircraft Corp.*, supra, 216, quoting *Zawisza* v. *Quality Name Plate, Inc.*, supra, 119. In *Zawisza*, the testimony of a medical expert who had not been consulted by the plaintiff for treatment, but in fact examined the plaintiff only for purposes of testifying, was deemed incompetent evidence for purposes of the commissioner's consideration. *Zawisza* v. *Quality Name Plate, Inc.*, supra, 119–20. Conversely, the testimony from medical experts in *Cooke* was deemed competent where the experts based their testimony regarding the plaintiff's condition on medical reports that were made at the time of consultation as well as diagnoses for the plaintiff's treatment. *Cooke* v. *United Aircraft Corp.*, supra, 216.[5]

Here, Craig and Culligan both examined Keenan for the purposes of diagnosis and treatment. Significantly, our review of the record reveals letters and reports from both physicians, but those from Culligan specifically and extensively detail Keenan's medical condition, symptoms, and course of treatment from January through September, 1994. We cannot, therefore, conclude that any or all of this evidence was incompetent.

It is of no moment that the commissioner's finding and award did not patently state *every* piece of credible evidence or testimony that contributed to the rendering of her decision. No such requirement has ever been imposed on the commissioner. The commissioner had before her various medical reports and opinions, medi-

---

[5] Unlike the present case, the medical experts in *Cooke* v. *United Aircraft Corp.*, supra, 152 Conn. 214, gave conflicting testimony regarding the plaintiff's condition. Id., 217. Their testimony was deemed competent evidence for the commissioner's consideration by virtue of the fact that each expert described in great detail the plaintiff's condition, symptoms, and course of treatment over a period of eighteen months. Id., 216–17. In the present case, Culligan's detailed medical reports concerning Keenan's condition, prognosis and course of treatment should likewise be deemed competent evidence for the commissioner's consideration.

cal records and testimony from which she could properly determine whether Keenan's fall of December 20, 1993, was causally related to his prior, compensable back and groin injury. Because the commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses in workers' compensation cases,[6] it was properly within the commissioner's discretion to rely on all or part of Culligan's medical evaluations as well as those of Craig. See *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981); *Lamont* v. *New Hartford*, 4 Conn. App. 303, 305, 493 A.2d 298 (1985).

Accordingly, we conclude that the commissioner's finding and award in this case was reasonable, supported by the evidence and not contrary to law.

The decision of the workers' compensation review board is reversed and the case is remanded with direction to affirm the commissioner's decision.

In this opinion the other judges concurred.

---

[6] See Regs., Conn. State Agencies § 31-301-8; *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539–41.