### SUSAN MARANDINO *v.* PROMETHEUS PHARMACY ET AL.
### (AC 28146)

Gruendel, Lavine and Mihalakos, Js.

---

Argued October 16, 2007—officially released February 5, 2008

*Jason M. Dodge*, with whom, on the brief, was *Douglas L. Drayton*, for the appellants (defendants).

*Angelo Paul Sevarino*, for the appellee (plaintiff).

GRUENDEL, J. The defendants, Prometheus Pharmacy and CNA Risk Services, Inc., appeal from the decision of the workers' compensation review board (board) affirming the finding and award of the workers' compensation commissioner (commissioner) in favor of the plaintiff, Susan Marandino, and dismissing the defendants' appeal. The defendants claim that the board (1) improperly sustained the commissioner's finding that the plaintiff's knee injury causally was related to her master right elbow injury and, as such, was compensable, and (2) improperly sustained the commissioner's finding that the plaintiff is totally incapacitated and entitled to compensation under General Statutes § 31-307. We affirm in part and reverse in part the decision of the workers' compensation review board.

The following facts are relevant to the defendants' appeal. In February, 1999, while employed by Prometheus Pharmacy, the plaintiff fell at her place of work and sustained an injury to her master right elbow. Beginning in July, 1999, the plaintiff underwent surgeries and received treatment for her arm injury from Andrew Caputo, an orthopedic surgeon. Specifically, on July 12, 1999, the plaintiff underwent an open reduction internal fixation of her right radial head fracture with left iliac crest bone graft, which was secured by a titanium plate, as well as a right carpal tunnel release. In December 1999, Caputo discovered that there was a crack in the titanium plate and that surgery was required to fix it. Therefore, on January 19, 2000, the plaintiff underwent a right radial head replacement and release of her right elbow contracture.

On March 1, 2001, the plaintiff underwent her final arm surgery, a right anterior subcutaneous ulnar nerve transposition and excision of deep sutures on her right

lateral elbow. Thereafter, the plaintiff underwent an independent medical evaluation with Andrew Nelson, a physician. He diagnosed the plaintiff with, among other things, right upper extremity chronic regional pain syndrome, which he opined was directly and causally related to the injury sustained when the plaintiff fell at her place of work and that the plaintiff's prognosis was poor to fair. He also opined that she was significantly impaired, requiring ongoing narcotic medication and that "[a]t best she would only be able to utilize her right upper extremity as a sedentary assistant unless additional evaluation and possible intervention provided her function by way of range of motion, strength, and decreased pain." Nelson opined that the plaintiff would reach maximum medical improvement in March, 2002, approximately twelve months after her final surgery on March 1, 2001. In 2002, Nelson authored a second independent medical evaluation in which he indicated that there was no significant change in the plaintiff's complaints or physical evaluation since the November 9, 2001 independent medical examination and that the plaintiff suffered from a permanent partial impairment of 41 percent of the right upper extremity.

Beginning in June, 2000, and through the time of the hearings before the commissioner, the plaintiff was treated by a pain specialist, Steven Beck, for her arm injury. Beck's notes indicate an increase in pain, sensitivity and immobility over time, as well as an increase in narcotic medication over time to control the plaintiff's arm pain. Beck testified at his deposition that the plaintiff suffers from complete regional pain syndrome and reflex sympathetic dystrophy.

On April 24, 2002, the plaintiff reached maximum medical improvement and entered into a voluntary agreement to receive permanent partial disability benefits, in accordance with General Statutes § 31-308, on the basis of a 41 percent permanent partial impairment

of her right upper extremity. The plaintiff received benefits in accordance with that agreement for 85.28 weeks.

In the meantime, in January, 2000, between the plaintiff's first and second arm surgeries, she suffered an injury to her right knee. The plaintiff was in her home and hurriedly was ascending her basement stairs to answer a telephone that was ringing on the first floor when she felt herself fall backward. To secure her balance, and fearful about the crack in the plate in her right arm, the plaintiff reached out for the railing, located on her right side, with her left arm. In doing so, she jerked her body and twisted her right knee. The plaintiff was treated by Vincent Santoro, an orthopedic surgeon, for her knee injury and underwent two surgeries for an osteochondral lesion.

At some point, after the voluntary agreement was entered into, a hearing was scheduled before the commissioner in which the plaintiff sought to receive benefits for total incapacity. Hearings were held before the commissioner on the matter, and he made several findings, specifically, that the plaintiff had a compensable 41 percent permanent partial disability of her master right arm, that her knee injury was compensable and that she was totally incapacitated and entitled to benefits in accordance with § 31-307. The defendants appealed to the board, challenging the commissioner's findings that the plaintiff's knee injury was compensable and that the plaintiff was totally incapacitated and entitled to benefits in accordance with § 31-307.[1] The defendants do not challenge the commissioner's finding that the plaintiff has a compensable 41 percent permanent partial disability of her master right arm.[2] The

[1] The defendants concede that the plaintiff is eligible for additional benefits in accordance with General Statutes § 31-308a.

[2] At oral argument, the defendants conceded that this court could sustain the board's affirmance of the commissioner's finding that the plaintiff was unemployable and, thus, totally incapacitated on the basis of the 41 percent permanent partial disability of the plaintiff's master right arm. In other words, sustaining the commissioner's finding that the plaintiff is totally

board affirmed the findings of the commissioner and dismissed the defendants' appeal. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants claim that the board acted improperly in sustaining the commissioner's finding that the plaintiff's knee injury was compensable. The defendants first claim that the reports on which the commissioner relied, in part, to make this finding should not have been admitted into evidence. Second, the defendants claim that there was insufficient evidence in the record on which the commissioner could rely to find that the plaintiff's knee injury was causally related to the prior compensable arm injury. We address each argument in turn.

A

The defendants argue that the medical report authored by Santoro in which he opined that the plaintiff's knee injury was causally related to her arm injury was not a medical report for purposes of General Statutes § 52-174 (b) and, as such, should not have been admitted into evidence. Two reports matching that description were before the commissioner. Because the defendants do not specify which report they take issue with, we address them both.

During the hearings before the commissioner, the plaintiff sought to enter into evidence the plaintiff's medical records authored by Santoro. Among the records were a note and a letter that both contained an opinion that the knee injury was causally related to the arm injury. The letter, dated, April 5, 2002, stated: "I am responding to your . . . correspondence regarding your client and my patient, [the plaintiff]. Please be

incapacitated would not require this court to sustain the commissioner's finding that the knee injury is compensable.

advised that we have recommended surgery and this dates back to [February, 2002]. I talked specifically with the patient that she had an osteochondral lesion. *This is a direct result of her previous work-related trauma and as such is a continuation of her ongoing problems. This does not represent a new condition.*" (Emphasis added.) The defendants did not object to this letter during the hearing, and, therefore, they can not raise the propriety of its admission into evidence for the first time on appeal. See *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 699, 931 A.2d 348 ("[t]his court does not review claims raised for the first time on appeal"), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

The plaintiff also sought to introduce into evidence a note from her medical records that was authored by Santoro. The note, dated November 28, 2000, stated: "I met with [the attorneys] in the case of [the plaintiff]. *I feel that there is a direct related cause of the knee injury to the right elbow pre-existing problem.*" (Emphasis added.) The defendants objected to the note and argued that it was not a medical report in accordance with § 52-174 (b). Over the defendants' objection, the commissioner admitted the note into evidence.

In the commissioner's findings and award, he found that "Dr. Santoro reported that there is direct related cause of the [plaintiff's] knee injury to her right elbow preexisting problem" and further found that "[t]he opinion of Dr. Santoro with respect to the cause of the [plaintiff's] injury to her right knee being uncontradicted is persuasive." It is not clear whether the commissioner made these findings on the basis of the November 28, 2000 note, or rather, whether he found these facts on the basis of the April 5, 2002 letter. Because the defendants cannot claim that the April 5, 2002 letter was before the commissioner improperly and because it contained the same opinion of causation

regarding the knee and arm injury as the November 28, 2000 note, we need not address the defendants' claim that the November 28, 2000 note should not have been admitted. Put another way, the November 28, 2000 note was cumulative of the opinion contained in the April 5, 2002 letter. Therefore, even if the November 28, 2000 note was admitted improperly, the commissioner could have relied on the April 5, 2002 letter for the very same proposition.[3] Cf. *State* v. *Williams*, 30 Conn. App. 654, 656, 621 A.2d 1365 (1993) ("We do not reach the issue of whether the trial court's ruling was proper. . . . It is well established that a judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence to the same effect has also been placed before the jury." [Citation omitted.]); *State* v. *Farnum*, 275 Conn. 26, 31 n.4, 878 A.2d 1095 (2005) ("[i]n light of our conclusion that there was sufficient evidence to affirm the defendant's conviction in the absence of this evidence, we need not address this claim").

B

The defendants next claim that the board improperly sustained the commissioner's finding that the plaintiff's knee injury causally was related to her master right arm injury. We agree and conclude that there were insufficient subordinate facts in the record from which the commissioner reasonably could have concluded

[3] The defendants also claim that the admission of the November 28, 2000 note violated their procedural due process right to cross-examine Santoro. The defendants argue that because the note is not a medical record for purposes of General Statutes § 52-174 (b), it was hearsay that was inadmissible unless it could be admitted under an exception to the rule against hearsay and, as such, was inadmissible because Santoro had moved to Oregon and was not present to testify and be cross-examined by the defendants. We do not reach this claim for the same reason that we do not reach the claim of whether the November 28, 2000 note was admitted into evidence properly in accordance with § 52-174 (b).

that the knee injury causally was related to the master right arm injury.

"The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award. . . . Our scope of review of the actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence . . . . Our role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 99 Conn. App. 336, 342–43, 913 A.2d 483, cert. granted on other grounds, 281 Conn. 929, 918 A.2d 277 (2007).

"Our workers' compensation scheme indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation [benefits]. . . . To recover under the Workers' Compensation Act [General Statutes § 31-275 et seq.], a plaintiff must prove that the claimed injury is connected causally to the employment by demonstrating that the injury (1) arose out of the employment and (2) occurred in the course of the employment." (Citation omitted; internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 341. Furthermore, "[i]t is well settled in workers' compensation cases that the

injured employee bears the burden of proof, not only with respect to whether an injury was causally connected to the workplace, but that such proof must be established by *competent evidence.*" (Emphasis in original; internal quotation marks omitted.) *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 447, 774 A.2d. 992 (2001).

"[T]raditional concepts of proximate cause furnish the appropriate analysis for determining causation in workers' compensation cases. . . . [T]he test for determining whether particular conduct is the proximate cause of an injury [is] whether it was a substantial factor in producing the result." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 342. "The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 546, 542 A.2d 1118 (1988).

In the present case, the plaintiff's knee injury occurred outside the workplace and approximately nine months after her original arm injury. She twisted and injured her knee when, while hurriedly ascending a flight of stairs, she felt herself fall backward and grabbed a railing, located on her right side, with her left arm because she was concerned she might reinjure her right arm. Although the commissioner credited the testimony of the plaintiff, it was not sufficient by itself to establish proximate causation between the arm injury and the knee injury. Whether the plaintiff's work-related arm injury was a proximate cause of her subsequent knee injury or, rather, whether it was caused by some other source, is not "a matter within the common knowledge of the commissioner, the board or this court. Such a theory of cause and effect is not so in accord with ordinary human experience . . . that it obviates

the need for expert medical evidence." (Citation omitted; internal quotation marks omitted.) *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 449; see also *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 152, 291 A.2d 743 (1972) ("[w]here . . . it is difficult to ascertain whether or not the [injury] arose out of the employment, it is necessary to rely on expert medical opinion" [internal quotation marks omitted]). The plaintiff, therefore, bore the burden to provide the commissioner with competent expert medical evidence regarding causation. Although the plaintiff provided the commissioner with expert medical evidence in an attempt to demonstrate that her knee injury proximately was caused by her arm injury, we conclude that the evidence was not competent evidence on which the commissioner could rely.

Expert testimony can be competent evidence "[a]s long as it is clear that the expert's opinion was based on more than mere conjecture . . . . [E]xpert opinions must be based on reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . To be reasonably probable, a conclusion must be more likely than not. An expert's testimony as to the reasonable probability of the occurrence of an event does not depend on semantics or the use of any particular term or phrase, but rather, is determined by looking at the entire substance of the testimony. . . . The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. . . . Inferences [made by the commissioner, however] may only be drawn from competent evidence. Competent evidence does not mean any evidence at all. It means evidence on which the trier properly can rely and from which it may draw reasonable inferences." (Citations omitted; internal quotation

marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 343.

In the present case, the commissioner found that because Santoro's report was uncontradicted, it was persuasive. That finding is improper for two reasons. First, it incorrectly suggests that the burden of proof shifts to the defendant once the plaintiff has provided some evidence of causation. Under Connecticut law, the burden remains on the plaintiff to show through competent evidence that the subsequent injury is causally related to the prior compensable injury. See *Dengler* v. *Special Attention Health Services, Inc.*, supra, 62 Conn. App. 447. Second, "testimony of even the most persuasive expert witness cannot be credited if it is not based on facts." *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 344. We conclude that Santoro's reports were not competent evidence on which the commissioner could rely, but rather were grounded in speculation and conjecture. See id.

Santoro concluded that the knee injury was causally linked to the prior compensable arm injury without demonstrating the causal connection. There is nothing in Santoro's reports, or in the record, to suggest that the arm injury, rather than some other source, was a substantial factor in bringing about the knee injury. See *Murchison* v. *Skinner Precision Industries, Inc.*, supra, 162 Conn. 152 ("Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot conclude that the [subsequent injury] arose out of the employment. *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 714, 134 A. 259 [1926]." [Internal quotation marks omitted.]). Put another way, Santoro's reports provided a determination of causation without any supporting medical facts from which medical causation could reasonably

be inferred. Because Santoro's opinion regarding causation is merely a statement devoid of a basis in fact, we conclude that it was not competent evidence, but rather speculation and conjecture and, as such, could not, without more, be relied on to determine whether legal causation existed between the arm and leg injury.[4] See *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 344. As the commissioner could not properly have relied on Santoro's opinion and, as the plaintiff's testimony by itself was not sufficient to establish proximate cause, the commissioner improperly found the knee injury to be causally related to the arm injury and, thus, compensable. The commissioner's finding that the knee injury was compensable must be set aside, as there was insufficient evidence in the record from which the commissioner could have made this finding.

## II

The defendants' second claim is that the plaintiff is not entitled to total incapacity benefits under § 31-307. The defendants first argue that because the plaintiff reached maximum medical improvement and entered into a voluntary agreement to receive permanent partial disability benefits, she is unable to request total incapacity benefits without demonstrating a change in medical condition since entering into the agreement. The defendants explain that this is because the workers' compensation statutory scheme "numerically progress[es] by statute number." As such, once the plaintiff reached maximum medical improvement and voluntarily accepted an agreement to receive permanent partial

---

[4] We do not hold that a subsequent injury, sustained after a work-related injury in the workplace, is never causally related. We also do not hold that expert medical evidence can never establish that a second injury causally is related to a prior compensable injury. We conclude only that the expert medical evidence regarding causation provided to the commissioner was devoid of any basis in fact and that it was not sufficient evidence from which he could conclude that the leg injury proximately was caused by the arm injury.

disability benefits under § 31-308, she is able to request further benefits under General Statutes § 31-308a only, unless she files a motion asking the commissioner to open or modify her award on the basis of a change in her condition. Second, the defendants argue that even if the plaintiff can demonstrate a medical change sufficient to seek modification of her award, she is not entitled to total incapacity benefits as she has not exercised reasonable diligence in securing employment and, as such, has not demonstrated a diminished earning capacity in accordance with § 31-307. We address each argument in turn.

General Statutes § 31-315 provides in relevant part: "An award of, or voluntary agreement concerning, compensation . . . shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party . . . whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased . . . ." See also *Hunt* v. *Naugatuck*, 273 Conn. 97, 103, 868 A.2d 54 (2005) ("[p]ursuant to General Statutes § 31-315, a workers' compensation award is always limited to a claimant's current condition and [is] always subject to later modification upon the request of either party . . . if the complainant's condition changes" [internal quotation marks omitted]). The defendants concede as much in their brief where they state: " The [plaintiff] was not without remedy for some change in her physical condition after accepting permanent partial disabilities . . . . The commissioner had continuing jurisdiction under § 31-315 to modify an award or voluntary agreement if there had been a change in her condition." The defendants, however, argue that the plaintiff has not suffered a change in her condition that would warrant a modification under § 31-315. Our review of the record before the commissioner, however, persuades

us that there was sufficient evidence presented to the commissioner from which he could have determined that the plaintiff's condition had worsened from the time that she had entered into the voluntary agreement.

After the voluntary agreement was entered into by the plaintiff and the defendants, the plaintiff continued to be treated by Beck, her pain specialist. At the hearing, the commissioner was presented with Beck's notes dating from August 16, 2000, through April 1, 2004. The notes reveal that over time, the pain, sensitivity and lack of mobility in the plaintiff's master right arm increased. The plaintiff's first two visits to Beck after entering into the agreement are not notable for any change. On December 3, 2002, however, the plaintiff reported that she was having persistent pain and burning in her right forearm and a substantial limitation of function. Beck noted that in addition to her original problem, she had a "trigger point in the right [extensor digitorum communis]."[5] Beck recommended an injection to alleviate the pain. Next, in January, 2003, Beck reported that the injection did not work, that the plaintiff suffered an increase in immobility of the arm due to pain and that her symptoms seemed to have intensified for more than one week. In July, 2003, Beck noted that the plaintiff suffered from "persisting significant neuralgia on her present dosing of Norco and Neurontin." To alleviate her pain, Beck increased her dose of Neurontin. In September, 2003, the plaintiff returned to Beck and reported continued pain as well as new pain radiating from her neck into her arm. In November, 2003, although the plaintiff seemed to be suffering less from the pain that radiated from her neck to her arm, she continued to suffer an increased amount of pain since the agreement was entered into. In January, 2004,

[5] Extensor digitorum communis is a muscle of the posterior compartment of the forearm. See T. Stedman, Medical Dictionary (27th Ed. 2000) p. 1145.

she experienced the same increased pain, and her prescription for Norco was increased. The last record authored by Beck and presented to the commissioner is dated April 1, 2004. Notably, Beck reported that "[the plaintiff] has exacerbation of what appears to be predominantly sympathetic medicated pain right side." Beck suggested that she see her orthopedic surgeon so that he might perform an X ray to check the position of the radial head implant. Beck's medical notes, therefore, reveal sufficient evidence that the plaintiff was suffering an increased level of both pain and immobility in her master right arm after the time the voluntary agreement was entered into. The commissioner was entitled to rely on this evidence to determine that the plaintiff suffered a change in medical condition sufficient to warrant a modification of the voluntary agreement.

The defendants next argue that the plaintiff is not entitled to total incapacity benefits, as she failed sufficiently to demonstrate a diminished earning capacity because she did not actively seek employment. A review of our case law indicates that a plaintiff is not necessarily required to seek employment actively in order to demonstrate a diminished earning capacity sufficient to secure benefits under § 31-307. In order to receive total incapacity benefits under § 31-307, a plaintiff bears the burden to demonstrate a diminished earning capacity by showing either that "she has made adequate attempts to secure gainful employment *or* that she truly is unemployable." (Emphasis added.) *Bidoae* v. *Hartford Golf Club*, 91 Conn. App. 470, 483, 881 A.2d 418, cert. denied, 276 Conn. 921, 888 A.2d 87 (2005), cert. denied, 547 U.S. 1112, 126 S. Ct. 1916, 164 L. Ed. 2d 665 (2006). Whether the plaintiff makes this showing of unemployability by demonstrating that she actively sought employment but could not secure any, or by

demonstrating through a nonphysician vocational rehabilitation expert or medical testimony that she is unemployable, as the plaintiff did in the present case, as long as there is sufficient evidence before the commissioner that the plaintiff is unemployable, the plaintiff has met her burden.

In the present case, the commissioner was presented with the testimony of nonphysician vocational rehabilitation experts for both the defendants and the plaintiff as well as medical evidence on which he could rely to find the plaintiff totally incapacitated based solely on the 41 percent permanent partial disability of her master right arm. The commissioner credited the testimony of the plaintiff's expert over that of the defendants' expert, as the commissioner is entitled to do. See *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 343 ("[i]t [is] the province of the commissioner to accept the evidence which impress[es] him as being credible and more weighty" [internal quotation marks omitted]). From the testimony of the plaintiff's vocational expert, the commissioner found, inter alia, that the plaintiff could not meet the physical requirements of her previous job as a pharmacy technician and that she did not have transferable skills from her previous job because of the limited use of her master arm. In addition, the commissioner was presented with Beck's deposition testimony in which he opined that, because of her arm injury, it was doubtful that "[the plaintiff] could hold a job . . . because of the pain level and its interference with the way she focuses and functions." The commissioner was also presented with the opinion of Nelson that the plaintiff's ability to work was significantly impaired because she required ongoing narcotic medication in addition to the functional impairment of her right upper extremity.

As there was sufficient evidence before the commissioner in the form of expert testimony that the plaintiff's

arm injury rendered her unemployable, the commissioner did not act improperly in finding that the plaintiff demonstrated a diminished earning capacity on the basis of the 41 percent permanent partial disability of her master right arm and, as such, was eligible to receive total incapacity benefits under § 31-307.

The decision of the workers' compensation review board is reversed with respect to the finding that the plaintiff's knee injury is compensable. The decision is affirmed in all other respects.

In this opinion LAVINE, J., concurred.

MIHALAKOS, J., dissenting in part. Although I agree with the majority's analysis and conclusions in parts I A and II, I respectfully dissent from the majority's conclusion in part II B that the plaintiff, Susan Marandino, failed to prove causation. My disagreement with the majority is twofold. First, I believe that the report by Vincent Santoro, the plaintiff's orthopedic surgeon, is competent evidence on which the workers' compensation commissioner (commissioner) could rely. Second, I believe that the record reveals a sufficient factual basis for Santoro's conclusion.

I

It is well settled that the injured employee bears the burden of proof on causation, which must be met through competent evidence. See, e.g., *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 282, 714 A.2d 60 (1998). In this case, expert medical evidence on causation was necessary because the cause and effect relationship of the work-related arm injury and the subsequent knee injury was not a matter within the common knowledge of the fact finder. The plaintiff, therefore, was required to produce expert evidence establishing causation.

The plaintiff attempted to meet her burden by introducing Santoro's report. The defendants, Prometheus Pharmacy and CNA Risk Services, Inc., do not dispute that Santoro was an expert qualified to provide expert medical evidence establishing causation. The majority contends, citing *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 99 Conn. App. 336, 913 A.2d 483, cert. granted, 281 Conn. 929, 918 A.2d 277 (2007), that Santoro's opinion failed to establish causation because it provided only an ultimate conclusion on that issue without also providing the supporting medical facts from which the conclusion was drawn.[1] I disagree with the majority's belief that the report was required to include the supporting medical facts.

In workers' compensation cases, "the opinions of experts [are] to be received and considered as in other cases generally . . . ." (Internal quotation marks omitted.) *Keenan* v. *Union Camp Corp.*, supra, 49 Conn. App. 284. While I am mindful of the fact that the commissioner is not bound by ordinary common-law or statutory rules of evidence or procedure; see General

[1] I believe that *DiNuzzo* is easily distinguishable from the present case on the basis of the facts of each case. In *DiNuzzo*, the court found that there was no factual basis in the record for the expert's opinion. *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 99 Conn. App. 346. The plaintiff's expert testified that the decedent died of a heart attack caused by atherosclerotic disease, although he never ordered tests to determine whether the decedent, in fact, had atherosclerotic heart disease. Id., 344. The court noted that a thorough review of the record disclosed no evidence, other than the expert's opinion testimony, that the decedent had atherosclerotic heart disease. Id. The expert also testified that he did not examine the decedent's body, that no autopsy had been performed, and that he did not know whether the decedent had a congenital heart defect that could have caused a heart attack. Id. Finally, he concluded that without an autopsy, there was no way to know the exact cause of the decedent's death. Id., 345. On this basis, the court concluded that there was no factual basis to infer causation. Id., 346.

In the present case, and as discussed more fully in part II of my dissent, there was a factual basis from which an expert could infer causation because the record included evidence regarding the plaintiff's preexisting elbow injury and the limitations it bestowed on her range of motion and the facts and circumstances in which her knee injury occurred. From this evidence,

Statutes § 31-298; a general review of the law concerning the admissibility of expert testimony nevertheless is warranted.

"The trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed. . . . In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion. . . . Some facts must be shown as the foundation for an expert's opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. . . . It is rare for this court to find that a trial court has erred in a ruling permitting expert testimony." (Citations omitted; internal quotation marks omitted.) *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 93, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994); see also *Dixon* v. *United Illuminating Co.*, No. 03543 CRB-04-97-03 (April 9, 1998) ("[an] expert must demonstrate a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue" [internal quotation marks omitted]).

"The essential facts on which an expert opinion is based are an important consideration in determining the *admissibility* of the expert's opinion. . . . Where the factual basis of an opinion is challenged the question before the court is whether the uncertainties in the essential facts on which the opinion is predicated are such as to make an opinion based on them without substantial value." (Citation omitted; emphasis added; internal quotation marks omitted.) *Glaser* v. *Pullman &*

an expert was entitled to provide an opinion that the injuries were casually related.

*Comley, LLC,* 88 Conn. App. 615, 624, 871 A.2d 392 (2005). "Whether sufficient facts are shown as the foundation for the expert's opinion is a preliminary question to be decided by the trial court." Conn. Code Evid. § 7-4 (a), commentary, citing *Liskiewicz* v. *LeBlanc,* 5 Conn. App. 136, 141, 497 A.2d 86 (1985).

In the present case, Santoro's report was received by the commissioner without any challenge by the defendants as to the factual basis on which the report rested. If the defendants wanted to challenge the foundation for Santoro's opinion, they were required to object to the report's introduction. The majority's assertion that Santoro's report was not competent evidence because "testimony of even the most persuasive expert witness cannot be credited if it is not based on facts" relieves the defendants of their burden of objecting to the foundation of Santoro's opinion. Whether Santoro's opinion was based on facts is a preliminary question of admissibility. Once Santoro's report was properly received, the commissioner was entitled to rely on the conclusions set forth in the report if he found it credible. See *Chesler* v. *Derby,* 96 Conn. App. 207, 218, 899 A.2d 624 ("It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert." [Internal quotation marks omitted.]), cert. denied, 280 Conn. 909, 907 A.2d 88 (2006). Deeming the report not competent because it fails to include the supporting medical facts relieves the defendants of their burden to object to the foundation for the introduction of the report.

Furthermore, I disagree with the majority's conclusion that Santoro's report was based on speculation and conjecture because it did not include any supporting

medical facts. I believe that characterization misconstrues our law. Our precedent holds that "[e]xpert opinions must be based on reasonable probabilities rather than mere speculation or conjecture if they are to be admissible . . . . To be reasonably probable, a conclusion must be more likely than not." (Internal quotation marks omitted.) *Card* v. *State*, 57 Conn. App. 134, 138–39, 747 A.2d 32 (2000). Our case law concerning expert testimony grounded in speculation and conjecture concerns situations where an expert was unable to offer a firm conclusion and simply stated something to the effect that there was a fifty-fifty chance or causation was possible. See *Aspiazu* v. *Orgera*, 205 Conn. 623, 632, 535 A.2d 338 (1987) ("[a]ny expert opinion that describes a 'condition' as possible or merely fifty-fifty is based on pure speculation").

The present case is not such a case. The conclusion reached by Santoro was unequivocal: "[The knee injury] is a direct result of her previous work-related trauma and as such is a continuation of her ongoing problems." Santoro's opinion was clear and conclusive. There simply is no indication that his opinion was based on speculation or conjecture, rather than on a reasonable probability. Whether he had a factual basis for making his conclusion is a different inquiry that is properly viewed as a preliminary question of admissibility. The defendants, however, did not question the factual basis for Santoro's conclusion. Once Santoro's report was admitted, the commissioner was entitled to give the report whatever weight he believed was appropriate in light of the report's unknown foundation. See *Chesler* v. *Derby*, supra, 96 Conn. App. 218. I would find that Santoro's clear and unequivocal conclusion was competent evidence on which the commissioner could rely.

II

My second disagreement is with the majority's contention that there are insufficient facts in the record

from which causation could be inferred. My review of the record does not support the majority's belief that "[t]here is nothing in Santoro's reports, or in the record, to suggest that the arm injury, rather than some other source, was a substantial factor in bringing about the knee injury."

To prove causation in the present case, the plaintiff bore the burden of providing the commissioner with two distinct pieces of evidence. First, the plaintiff needed to provide the commissioner with competent evidence regarding causation. Second, because the causation at issue in this case is not a matter within the common knowledge or experience of the average person, she was required to provide expert testimony interpreting the evidence. *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 449, 774 A.2d 992 (2001). I believe that the plaintiff met her burden because evidence in the record satisfies the former and Santoro's report satisfies the latter.

Competent evidence means "evidence on which the trier properly can rely and from which it may draw reasonable inferences." Id., 451. My review of the record reveals at least two pieces of competent evidence that could establish causation. First, there are medical reports showing that the plaintiff has a limited range of motion in her right elbow and that she has "chronic limitation and pain in the right forearm." These reports also state that "with any volitional movement, there is shakiness of the right hand and forearm." Second, the plaintiff testified about the manner in which her knee injury occurred, namely, she was hurriedly running up a set of stairs and, because of fear of additional injury to her already injured right elbow, she reached across her body with her left arm to grab a railing located on her right side. Due to the cause and effect relationship of the injuries at issue, a medical expert was needed

to draw the necessary inference regarding causation on the basis of the facts in the record. See id., 440.

Santoro certainly could conclude that a preexisting elbow injury that limited the plaintiff's range of motion in her right arm, combined with the manner in which the knee injury occurred, established, to a reasonable degree of medical certainty, that the plaintiff's knee injury was casually related to her preexisting elbow injury. The purpose of expert testimony is to draw inferences from the facts which the fact finder could not draw at all or as reliably. Although it is not entirely clear which facts Santoro relied on in making his conclusion, any attack of the factual basis for Santoro's conclusion, as discussed in part I, is properly done as a preliminary matter challenging the opinion's admissibility. That was not done. The evidence in the record establishes the extent of the preexisting elbow injury and manner in which the knee injury occurred and, consequently, provided the commissioner with sufficient facts from which causation could be inferred. Santoro's report was an expert opinion making the necessary inference. It is outside this court's competency to say that there are not sufficient facts in the record from which an expert could infer causation. Whether the plaintiff's knee injury was casually related to her preexisting elbow injury is a matter for an expert to decide. On the basis of the facts in the record as a whole, Santoro could make that conclusion.

Furthermore, while Santoro's opinion was not a model of clarity because it provided only an ultimate conclusion without also providing supporting facts, the defendants were entitled to present their own evidence on causation. They could have deposed Santoro or produced their own expert rebutting Santoro's conclusion. They also could have challenged the report's admissibility in light of its omission of foundational facts. They did none of these. In light of the facts in the record and

the remedial purpose of the workers' compensation statutory scheme, I believe that the workers' compensation review board properly upheld the factual determinations of the commissioner.

For the reasons given, I respectfully dissent.