WILLIAM R. SOLONICK *v.* ELECTRIC BOAT
CORPORATION
(AC 29575)

Bishop, Beach and Borden, Js.

794

Argued October 21—officially released December 30, 2008

*Howard B. Schiller*, with whom was *Stephen D. Button*, for the appellant (plaintiff).

*Robert S. Bystrowski*, with whom, on the brief, was *Cristin E. Sheehan*, for the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiff, William R. Solonick, appeals from the decision of the workers' compensation review board (board) affirming the trial commissioner's denial of his workers' compensation claim against the defendant, Electric Boat Corporation. The plaintiff claims that the board improperly concluded that the commissioner's factual findings were based on a correct legal standard and were supported by the evidence. We affirm the decision of the board.

The plaintiff filed his workers' compensation claim on the ground that a heart attack he had suffered and

his coronary artery disease arose out of the stress associated with his employment. After a full evidentiary hearing, the commissioner denied the claim, finding that the heart attack and coronary condition did not arise out of the employment. After the plaintiff filed a motion to correct the commissioner's finding, which the commissioner granted in part, the plaintiff appealed to the board, which affirmed the commissioner's decision. This appeal followed.

The board summarized the facts as found by the commissioner as follows. The plaintiff began work for the defendant in 1968, concentrating in the design and development of nuclear containment vessels. He was promoted a number of times, brought work home regularly and was barred from discussing his job outside of work because of security restrictions. In 1985, he was promoted to chief of engineering, expanding his responsibilities. On October 28, 1986, at 8 a.m., the plaintiff suffered chest pains in the defendant's parking lot. Believing it was just indigestion, he was not examined at the defendant's medical facility until 11 a.m., when he was transferred to Pequot Treatment center, where he went into cardiac arrest. He was transported to Lawrence and Memorial Hospital in New London, where he was treated by Brian Ehrlich, a cardiologist.

The plaintiff's job duties on the day of his cardiac arrest were unremarkable. Prior thereto he had been treated in 1979 by Gregory Kundrat, a physician, for hypertension. Kundrat's records reflected only one entry related to work, a headache, and no complaints about job related stress prior to the 1986 incident. The plaintiff had not complained to his wife or family about job related stress. He missed three months of work after the 1986 incident and, after one month of part-time work, returned to work full-time.

By 1991, the plaintiff had been promoted to senior engineer, which divested him of day-to-day manage-

ment of an engineering group. Although the Seawolf submarine program was winding down, further reducing his volume of work, the plaintiff still had deadlines and budget pressures. The next year, the plaintiff worked on a redesign of the Trident submarine.

In 1998, the plaintiff again experienced chest pains and consulted with Ehrlich. Ehrlich's April 20, 1998 report did not mention work stress but noted other risk factors for coronary artery disease, such as obesity, hyperlipidity, family history and long-standing hypertension. On July 6, 1999, Ehrlich diagnosed the plaintiff with functional class III angina,[1] and recommended a cardiac catheterization and that the plaintiff stay out of work until it was performed. On July 10, 1999, the plaintiff underwent a coronary triple bypass operation.

Following the bypass surgery, the plaintiff's superiors at work were eager to have him return to work, and he was called at home to update them on ongoing projects. Ehrlich cleared the plaintiff to return to work on September 2, 1999, beginning with two weeks of four hour days, followed by full-time work. At the plaintiff's request, Kundrat wrote to the plaintiff's supervisor, Peter Landry, to suggest that the plaintiff needed to minimize stress in his life and restrict his work schedule.

The defendant accommodated a flexible schedule for the plaintiff, but he found it difficult to accomplish his responsibilities on a part-time basis. On November 2, 2003, the plaintiff retired on the advice of his treating physician.

The board recounted the evidence supporting the plaintiff's claim as follows. Landry testified that severe

---

[1] Functional class III angina is defined as heart disease resulting in a marked limitation in physical activity with symptoms at less than ordinary physical activity, comfortable at rest. The Criteria Committee for the New York Heart Association, Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Great Vessels (Little Brown & Co. 9th Ed. 1994) pp. 253–55.

time constraints and stress were part of the work environment for engineers at the defendant's shipyard, although he also believed that there were more pressured jobs there and that the plaintiff's level of stress would wax and wane. Kundrat, the plaintiff's treating physician, testified that the plaintiff's coronary arteriosclerosis was multifactorial, on the basis of his family history—specifically his father, who had hypertension and had died of a massive stroke—hypertension, stress, sedentary lifestyle, being overweight and mild hypertriglyceridemia. There was evidence that the plaintiff had been denied admission to the military in the 1970s due to hypertension, that he had had mildly elevated cholesterol before 1986 and had been diagnosed with diabetes in 1991.

More specifically, Kundrat testified that but for the plaintiff's job stress, he would not have had his 1986 heart attack and that his job stress was a substantial factor causing that event and a substantial factor in the progress of his atheroscloteric artery disease and hypertension. Ehrlich, the plaintiff's other treating physician, testified that the plaintiff's family history, obesity, long-standing hypertension and job related stress were all substantial factors in causing the 1986 heart attack and cardiac condition. Both Ehrlich and Kundrat testified that the plaintiff cannot work.

The defendant's expert witness, Abd U. Alkeylani, a cardiologist, reviewed the plaintiff's medical records. He testified that the substantial factors causing the 1986 heart attack were undiagnosed subacute diabetes, hypertension, hyperlipidemia, obesity and family history. He testified further that very unusual stress can cause plaque to rupture and precipitate a heart attack, but that there was no unusual stress in the period prior to the attack. He concluded that the plaintiff's stress at work was not a substantial factor causing his heart attack or the progression of his coronary artery disease.

The board also noted that the commissioner had found that the plaintiff and Landry were credible witnesses and that the plaintiff was an exemplary, dedicated employee of the defendant. The commissioner further found that although the plaintiff's job subjected him to the usual stress associated with his occupation as an engineer at the defendant's shipyard, he did not complain about the stress on the job and that the events immediately prior to October 28, 1986, were not unusually stressful for him. The commissioner also specifically found Alkeylani's opinion the more credible opinion regarding the plaintiff's heart attack and coronary artery disease. Alkeylani had testified that the plaintiff's stress at work was not a substantial factor in his heart attack or progression of his coronary artery disease. Moreover, the commissioner found that the plaintiff's ordinary, everyday work stress was not a substantial factor causing the heart attack, was not a substantial factor aggravating the underlying cardiac condition, and that, accordingly, the heart attack and coronary condition did not arise out of employment with the defendant.

I

The plaintiff first claims that the board improperly determined that to prove that his stress was work-related, he was required to "establish that work conditions were sudden, unusual or unexpected." We disagree.

Neither the board nor the commissioner imposed such a requirement of causation on the plaintiff, and both recognized, either explicitly or implicitly, that there is no such requirement. It is true that in *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 117, 527 A.2d 664 (1987), our Supreme Court referred, in dictum, to "the long-standing rule [in stress related

heart claims] that the claimant must prove that a sudden, unusual, and unexpected employment factor was a substantial factor in causing the claimant's condition." It is also true that the commissioner found that "[t]he events preceding the claimant's October 28, 1986 heart attack were routine and do not constitute a sudden unusual and unexpected employment factor." A fair reading of both the board's and the commissioner's decisions, however, does not support the plaintiff's claim.

We do not read *McDonough* as imposing such a requirement in stress related heart claims. After the somewhat loose language quoted previously, the court made clear that in stress related heart claims, there is no requirement that the claimant prove such unusual employment factors, although the proof of such factors could support a recovery. Id., 112–14. Instead, the court emphasized that "the trier must determine that there is a direct causal connection between the injury, whether it be the result of accident or disease, and the employment. The question he must answer is, was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment?" (Internal quotation marks omitted.) Id., 117. "[I]n Connecticut traditional concepts of proximate cause constitute the rule for determining . . . causation" of employment based disability. Id., 118. "[T]he test for determining whether particular conduct is the proximate cause of an injury [is] whether it was a substantial factor in producing the result." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 105 Conn. App. 669, 678, 939 A.2d 591, cert. granted on other grounds, 286 Conn. 916, 917, 945 A.2d 977 (2008).

The board read *McDonough* in precisely that fashion and applied the appropriate standard in the case, and

the commissioner did the same. Put another way, the commissioner simply found that the plaintiff had not proven that work-related stress was a substantial factor in causing his heart attack and coronary disease; the board read the commissioner's decision in that way, and both were consistent with a proper reading of *McDonough.*

II

The plaintiff next claims that the commissioner improperly "relied upon medical opinion which had no proper factual underpinnings and was therefore incompetent expert opinion." We reject this claim.

The commissioner specifically found that Alkeylani's testimony regarding the causes of the plaintiff's heart attack and coronary condition was more credible than the opinions of the plaintiff's experts and that the plaintiff's ordinary, everyday stress in his work was not a substantial factor in aggravating his underlying cardiac condition. Under familiar principles governing the scope of review of a trial commissioner's findings by the board and by this court; see, e.g., *Marandino* v. *Prometheus Pharmacy,* supra, 105 Conn. App. 677, 679; these findings were based on competent evidence and cannot be disturbed. The fact that Alkeylani testified only after reviewing the plaintiff's medical records and was neither a treating nor examining physician does not, as the plaintiff suggests, render his medical opinion incompetent evidence. See *Greenberg* v. *Electric Boat Co.,* 142 Conn. 404, 409–10, 114 A.2d 850 (1955).

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.